UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **LYLANDA MCHENRY** | **CASE NO.  3:20-CV-00699** |
| **VERSUS** | **JUDGE DOUGHTY** |
| **J P CHASE MORGAN BANK N A** | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is Defendant's Motion to Dismiss and to Compel Arbitration. [doc. # 12]. Plaintiff opposes the motion. [doc. # 14]. Defendant filed a reply memorandum. [doc. # 19]. For the following reasons, it is recommended that the motion be **GRANTED IN PART** and **DENIED IN PART**. To the extent that JPMorgan Chase ("JPMC") moves to compel arbitration of Lylanda McHenry's claims, the motion should be **GRANTED**. To the extent that JPMC moves for dismissal of those claims with prejudice, however, the motion should be **DENIED.**

### Background

On June 3, 2020 Plaintiff Lylanda McHenry filed the instant action, alleging that she was harassed and terminated from her job in violation of the Americans with Disabilities Act ("ADA") or the Louisiana Employment Discrimination Law ("LEDL"). [doc. # 1]. Defendant then filed this motion to dismiss and compel arbitration on the basis that Plaintiff entered into a binding arbitration agreement. [doc. # 12].

On March 7, 2013, Plaintiff accepted an offer of employment at JPMC in Monroe, Louisiana. [doc. # 12-2; 12-3]. In connection with her acceptance of the offer, she signed a binding arbitration agreement ("BAA"). [doc. # 12-3]. The agreement states that all claims

related to Plaintiff's employment by or separation from JPMC would be subject to arbitration. [doc. # 12-3]. The BAA provides:

> As a condition of and in consideration of my employment with JPMorgan Chase & Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as follows:
>
> 1. SCOPE: Any and all "Covered Claims" (as defined below) between me and JPMorgan Chase (collectively "Covered Parties" or "Parties," individually each a "Covered Party" or "Party") shall be submitted to and resolved by final and binding arbitration in accordance with this Agreement.
>
> 2. COVERED CLAIMS: "Covered Claims" include all legally protected employment-related claims, excluding those set forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have against JPMorgan Chase or its officers, directors, shareholders, employees or agents which arise out of or relate to my employment or separation from employment with JPMorgan Chase and all legally protected employment-related claims that JPMorgan Chase has or in the future may have against me, including, but not limited to, claims of employment discrimination or harassment if protected by applicable federal, state or local law, and retaliation for raising discrimination or harassment claims, failure to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory and/or constructive discharge, breach of an express or implied contract, promissory estoppel, unjust enrichment, and violations of any other common law, federal, state, or local statute, ordinance, regulation or public policy, including, but not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of 1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the

  Americans with Disabilities Act of 1990, the Family and Medical Leave Act of 1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section 1981 of the Civil Rights Act, and the Worker Adjustment and Retraining Notification Act.

[doc. # 12-3].

  According to Defendant's contentions and evidence submitted into the record, Plaintiff signed this agreement electronically on March 7, 2013. [doc. #s 12-3; 19-3]. Further, Defendant submitted a sworn declaration of the custodian of records that the documentary evidence of Plaintiff's employment including the offer letter and BAA are "true and correct" and "kept in the regular course of business." [doc. # 12-2; 19-2]. However, Plaintiff contends that she never signed the letter as indicated by Defendant, and never received a copy of the BAA. [doc. # 14, p. 2]. Rather, Plaintiff contends that Defendant created the signed BAA after the Plaintiff filed suit; that is, that the document submitted to the court by Defendants is a fabrication. [doc. # 14, p. 3]. In support of this very serious accusation, Plaintiff points out that there are several instances of "improper capitalization" throughout the document, and that Plaintiff would never make so many mistakes; further, Plaintiff argues that the compensation levels in the document are incorrect as is the characterization of Plaintiff as a "temporary employee." [doc. # 14, p. 3].

  In response, Defendant submitted the metadata associated with Plaintiff's offer letter and attached BAA, and a declaration from the custodian verifying its authenticity. [doc. #s 19-2; 19-3]. The metadata shows that Plaintiff received the letter containing the arbitration agreement by email on March 6, 2013, and that she electronically accepted and modified the document on March 7, 2013. [doc. # 19-3].

Plaintiff also argues that even if she had signed the BAA, it is unenforceable because the terms are ambiguous. [doc. # 14, p. 5]. Finally, Plaintiff asserts that Defendants failed to remind her of the BAA before she filed suit, and thus are not entitled to enforce it. [doc. # 14, p. 6-7]. Plaintiff asks that if the Court orders the parties to arbitration, that it not dismiss the complaint. [doc. # 14, p. 8].

## Law and Analysis

1. **Motion to Compel Arbitration**

Courts must conduct a two-step inquiry in adjudicating a motion to compel arbitration under the Federal Arbitration Act. *Webb v. Investacorp, Inc*., 89 F.3d 252, 257–58 (5th Cir. 1996). First, the Court must determine whether the parties agreed to arbitrate the dispute in question. *Id.* at 258 (citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc*., 473 U.S. 614, 626 (1985); *Folse v. Richard Wolf Medical Instruments Corp*., 56 F.3d 603, 605 (5th Cir.1995)). The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 628); *see also Folse*, 56 F.3d at 605; *Painewebber Inc. v. Chase Manhattan Private Bank (Switz*.), 260 F.3d 453, 462 (5th Cir. 2001); *Sharpe v. AmeriPlan Corp.,* 769 F.3d 909, 914 (5th Cir. 2014). "[T]here is a strong presumption in favor of arbitration and a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Carter v. Countrywide Credit Indus*., 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/ Johnson Lane Corp*., 500 U.S. 20, 26 (1991)); *see also* 9 U.S.C. § 4.

First, in determining whether the parties agreed to arbitrate, the court must consider: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in

question falls within the scope of that arbitration agreement. *Webb,* 89 F.3d at 257–58 (citing *Daisy Mfg. Co. v. NCR Corp.*, 29 F.3d 389, 392 (8th Cir.1994)). *See also Tittle v. Enron Corp.* 463 F.3d 410, 418-49 (5th Cir. 2006). Further, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts*." Webb,* 89 F.3d at 257–58 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943-44 (1995)). In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself must be resolved in favor of arbitration." *Id*. (quoting *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ*., 489 U.S. 468, 475–76 (1989).

Under Louisiana law, parties may reciprocally bind themselves to arbitration agreements. La. Civ. Code arts. 3099–3100. Such agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." La. R.S. § 9:4201 (2009). *See also Banks v. Waitr Holdings, Inc*., No. 2:19-CV-00898, 2019 WL 6883672, at *3 (W.D. La. Dec. 17, 2019). A contract is valid if: (1) the parties have the capacity to contract, (2) the parties mutually consent, (3) there is a valid object, and (4) there is a lawful cause. *Banks,* 2019 WL 6883672 at *4 (citing La. Civ. Code arts. 1918, 1927, 1966, and 1971).

Here, the arbitration agreement between Plaintiff and Defendant is valid and enforceable under Louisiana law. First, it is not disputed that both parties have the capacity to contract. Second, the evidence of Plaintiff's receipt of the offer letter with the arbitration clause, her electronic signature on that letter, and her continued employment after receipt of the arbitration agreement establish that there was mutual consent.[1] Plaintiff's denial that she saw the letter is

---

[1] Further, this Court has held that even where an employee did not sign the arbitration clause, receipt of the clause and continued employment was enough to establish mutual consent. *Banks*,

unpersuasive in light of the evidence submitted by Defendants showing that she received and modified the offer letter, which contained the arbitration agreement. [doc. #s 12-2; 12-3; 19-2; 19-3]. Furthermore, Plaintiff's assertion that she would not have incorrectly capitalized her name in her electronic signature is not enough to overcome the business record evidence provided by defendant indicating that she did sign the agreement. Third, there was a valid object: the terms of employment including arbitration of related disputes. *See, e.g., Boxley,* 2020 WL 2104945 at *4. Finally, there was a lawful cause, and this dispute clearly falls within the terms of the arbitration agreement, which provides that "all legally protected employment-related claims" including "claims of employment discrimination or harassment protected by applicable federal, state or local law . . . and violations of . . . the Americans with Disabilities Act of 1990." Thus, there is a valid arbitration agreement between Plaintiff and Defendants.

Plaintiff has argued that the BAA is unenforceable under Louisiana law because it contains ambiguous terms. Specifically, Plaintiff alleges that where the contract states "'JP Morgan Chase' and the 'Firm' as used in this Agreement mean JPMorgan Chase & Co. and all of its direct and indirect subsidiaries," the terms "Firm," "JPMorgan Chase & Co.," and "direct and indirect subsidiaries" are ambiguous because they are not defined. The Court finds this argument unpersuasive, and that these terms are not ambiguous. The terms "JPMorgan Chase" and "Firm" are explicitly defined in the sentence quoted by Plaintiff; both terms mean JPMorgan Chase & Co. and its direct and indirect subsidiaries. [doc. # 12-3]. Further, the words direct and indirect subsidiaries, given their plain meaning, would mean entities owned by JPMorgan Chase & Co.

---

2019 WL 6883672, at *5; *see also Marino v. Dillard's, Inc*., 413 F.3d 530, 532–33 (5th Cir. 2005)(" Louisiana state courts recognize that contract law does not require written acceptance of an arbitration agreement."); *Boxley v. Family Dollar Stores, Inc*. No. 5:19-CV-00568, 2020 WL 2104945, at *4 n.5 (W.D. La. May 1, 2020).

(direct subsidiaries) or owned by subsidiaries of JPMorgan Chase & Co. (indirect subsidiaries). Plaintiff refers to "Chase" as her employer and further refers to "Chase Works" as a subdivision of Chase in her complaint. [doc. # 1]. Further, the offer letter clearly states that "Chase Works" is her role, and "JP Morgan Chase" is her employer. [doc. # 12-2]. However, even if Chase Works were a sub-entity of Chase, the BAA is inclusive of all these entities by its plain language. [doc. # 12-3]. Thus, there can be no doubt as to whether the BAA applied to Plaintiff's employer, and the contract is unambiguous and enforceable against Plaintiff.

Second, the Court must determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Webb,* 89 F.3d at 257–58 (quoting *Mitsubishi Motors*, 473 U.S. at 628); *see also Folse*, 56 F.3d at 605. Disputes related to employment discrimination and retaliation under the Americans with Disabilities Act ("ADA") or the Louisiana Employment Discrimination Law ("LEDL") are regularly arbitrated. *See, e.g., Boxley*, 2020 WL 2104945 (ordering arbitration of ADA claims); *Ceaser v. Dillards Dep't Store*, No. 6:18-CV-00984, 2018 WL 6991193, at *1 (W.D. La. Dec. 27, 2018)(ordering arbitration of LEDL claims. The parties do not identify any federal statute or policy foreclosing arbitration of Plaintiff's claims, and the Court is not aware of one. Thus, the arbitration agreement is valid and enforceable.

Finally, Plaintiff argues that Defendants should not be allowed to enforce the defense of untimely initiating arbitration proceedings because they did not remind Plaintiff of the existence of the arbitration agreement until it was too late for Plaintiff to timely initiate arbitration proceedings. [doc. # 14, p. 7-8]. However, the Court can find no law supporting that Defendants had a duty to notify Plaintiff of the arbitration agreement prior to plaintiff's filing a lawsuit. Having found a valid arbitration agreement, the Court must order that the parties "proceed to

arbitration in accordance with the terms of the agreement." *See* 9 U.S.C. § 4. Thus, in arbitration the issue of timely initiation of arbitration proceedings may be raised as a defense by Defendant and evaluated by the arbitrator. *See, e.g., Stemcor USA, Inc. v. M/V PATRIA*, No. CIV.A.H-03-4862, 2005 WL 1693943, at *1 (S.D. Tex. July 20, 2005)("In the arbitration, [defendant] may pursue its defense that [plaintiff] has waived any right to recover because it failed to seek arbitration timely and failed to comply with the procedural requirements for initiating arbitration.")

### 2. Motion to Dismiss

Where a court finds that all, rather than some or part, of a plaintiff's claims are subject to arbitration, there is some case law suggesting that the claims should be dismissed, rather than stayed pending arbitration. *See Ruiz v. Donahoe*, 784 F.3d 247, 250 n.3 (5th Cir. 2015); *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). However, the Fifth Circuit later clarified its holding in *Alford*, stating that "*Alford* merely held that dismissal was not an abuse of discretion," but that it "did not hold that dismissal was required." *Apache Bohai Corp., LDC v. Texaco China, B.V.*, 330 F.3d 307, 310-11 (5th Cir. 2003); *see also Hanberry v. First Premier Bank,* Civ. A. No. 19-10235, 2019 WL 4415267 at *7 (E.D. La. Sept. 16, 2019) (quoting same).

Thus, in this case, the Court finds that a third option is appropriate: administrative closure. Under 9 U.S.C. § 3,

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one

> of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

(emphasis added). The Court may be called upon to consider a conflict of law or to enforce, confirm, modify or vacate the arbitrator's award. Therefore, the Court finds that administrative closure is appropriate, removing this case from the Court's active docket, but providing the parties an opportunity to move to re-open the case if prudent or necessary. *Boxley*, 2020 WL 2104945, at *5–6; *see also Mire v. Full Spectrum Lending Inc*., 389 F.3d 163, 167 (5th Cir. 2004) ("The effect of an administrative closure is no different from a simple stay, except that it affects the count of active cases pending on the court's docket; i.e., administratively closed cases are not counted as active . . . This case still exists on the docket of the district court and may be reopened upon request of the parties or on the court's own motion. That situation is the functional equivalent of a stay, not a dismissal, and is thus not an appealable order under the FAA.").

## **Conclusion**

For the foregoing reasons,

IT IS RECOMMENDED that the motion be GRANTED IN PART and DENIED IN PART. To the extent that JPMC moves to compel arbitration of Plaintiff's claims, the motion should be GRANTED. To the extent that JPMC moves for dismissal of those claims with prejudice, however, the motion should be DENIED.

The Clerk of Court should be ORDERED to administratively terminate this action in his records, without prejudice to the right of the parties to reopen the proceedings. All pending deadlines and motions should be terminated, to be re-urged by counsel when the time is right.

This closure shall not be considered a dismissal of this matter. If further proceedings in it become necessary or desirable, any party may initiate it in the same manner as if this portion of the Court's Judgment had not been entered.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 11th day of January, 2021.

Karen L. Hayes
United States Magistrate Judge